OPINION
Plaintiff-appellant, Craig G. Prohazka, appearing prose, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Ohio State University Board of Trustees ("OSU Board of Trustees"), the Cleveland Clinic Foundation ("Cleveland Clinic"), Fairview Hospital, Dr. Jacob Palomaki, Dr. Jeffrey Hutzler, Dr. William Michener, Dr. Donald Malone, Dr. Pamela Jelly-Bowers, Dr. Seth Kantor, Dr. Brian Bowyer, Dr. James Hoekstra, Dr. Thomas Mauger, Dr. Roy St. John, Dr. Neal E. Krupp, Dr. Mary McIlroy, Dr. Todd Ivan, Dr. Anne Linton, Dr. Alexander Kennedy, Dr. Marie Fidela Paraiso, Dr. Jerome Belinson, Dr. Michael Makii, and Dr. William H. Kobak.
Plaintiff's action arises out of his dismissal from The Ohio State University College of Medicine ("OSU"). According to plaintiff's complaint, plaintiff was a medical student at OSU from August 20, 1992, until June 14, 1995. For his third year of medical school, plaintiff chose a program OSU offered in cooperation with the Cleveland Clinic. The program allowed plaintiff to complete his clinical rotations, the bulk of a third-year medical student's work, at the Cleveland Clinic and Fairview Hospital in Cleveland.
On December 12, 1994, OSU informed plaintiff he received a grade of unsatisfactory for the obstetrics/gynecology rotation he had just completed. Plaintiff unsuccessfully appealed the grade to the grading committee on January 23, 1995. On December 12, 1995, a hearing was held before the Student Review Subcommittee. Following the hearing, the members of the Student Review Subcommittee unanimously voted to dismiss plaintiff from medical school. Plaintiff was informed of the decision in a January 22, 1995 letter from the Student Review Subcommittee chairperson, Dr. Kathy Shy.
On February 9, 1995, the Clinical Academic Standing Committee met to hear plaintiff's appeal from the decision of Student Review Subcommittee. On February 13, 1995, the Clinical Academic Standing Committee notified plaintiff that all of his third year credit was being revoked, that he was being suspended from further participation in the normal course of study, and that he would be dismissed from OSU unless he agreed to (1) embark on a three-month unaccredited course of education with a mentor/tutor, (2) repeat the entire third year of medical school, and (3) submit to all recommendations and interventions suggested by a psychiatrist for an indefinite period of time. Plaintiff refused to accede to those conditions, and on June 14, 1995, the Academic Review Board dismissed plaintiff from OSU.
On June 11, 1997, plaintiff filed a ninety-five paragraph complaint against defendants in the Franklin County Court of Common Pleas. Specifically, plaintiff's complaint contained (1) eleven breach of contract claims against the OSU Board of Trustees, (2) forty-five claims for tortious interference with a contract against the Cleveland Clinic, and Drs. Palomaki, Kennedy, Paraiso, Belinson, Ivan, Linton, Hutzler, and Malone, (3) twenty-five claims for "arbitrary and capricious grading" against the Cleveland Clinic, Fairview Hospital, and Drs. Palomaki, Kennedy, Belinson, Ivan, Linton, Hutzler, Michener, and Makii, (4) eighteen claims for libel against the Cleveland Clinic, and Drs. Palomaki, Kennedy, Paraiso, Belinson, Hutzler, Linton, Malone, and Kobak, (5) six claims for conspiracy to grade arbitrarily and capriciously against the Cleveland Clinic, Fairview Hospital, and Drs. Palomaki, Michener, Hutzler, and Makii, (6) twelve claims for conspiracy to tortiously interfere with a contract against The Cleveland Clinic, Fairview Hospital, and Drs. Palomaki, Hutzler, Michener, and Makii, (7) three claims for breach of doctor/patient confidentiality against The Cleveland Clinic, and Drs. Krupp and Hutzler, (8) one claim for fraud against The Cleveland Clinic, and (9) eleven claims under Section 1983, Title 42, U.S. Code ("section 1983") alleging violations of plaintiff's right to privacy by Dr. Jelly-Bowers, violations of plaintiff's right to freedom of religion by the OSU Board of Trustees and Dr. Kantor, violations of plaintiff's right to due process of law by Drs. Palomaki, Kantor, and McIlroy, and violations of plaintiff's right to freedom of speech by Drs. Shy, Bowyer, Hoekstra, Mauger, and St. John.
Plaintiff subsequently served on all defendants several discovery requests, including a request for six hundred seven admissions. On December 19, 1997, Fairview Hospital and Dr. Makii (hereinafter collectively, the "Fairview Hospital defendants") filed a motion for a protective order, seeking to relieve them of responsibility for responding to any of plaintiff's requests for admissions, or in the alternative requiring them to respond to only twenty of the six hundred seven requests. On March 17, 1998, the trial court filed an entry granting in part the Fairview Hospital defendants' motion, ordering them to respond to forty of the six hundred seven requests for admission, to be chosen by plaintiff. On March 18, 1998, Fairview Hospital defendants filed a motion for summary judgment on all of plaintiff's claims against them.
On December 19, 1997, the OSU Board of Trustees, the Cleveland Clinic, and Drs. Palomaki, Hutzler, Michener, Malone, Jelly-Bowers, Shy, Kantor, Bowyer, Hoekstra, Mauger, St. John, Krupp, McIlroy, Ivan, Linton, Kennedy, Paraiso, Belinson, and Kobak (hereinafter collectively, the "OSU defendants") moved, pursuant to Civ.R. 12(B)(6), to dismiss various claims of plaintiff's complaint for failure to state a claim upon which relief can be granted. On March 18, 1998, the OSU defendants followed with a second motion to dismiss pursuant to Civ.R. 12(B)(6), together with a motion to strike certain of plaintiff's claims. The second motion to dismiss sought dismissal of all claims against the OSU defendants. The motion to strike sought to have the claims contained in eighty-four different paragraphs of plaintiff's complaint stricken for plaintiff's failure to attach the written instruments on which the claims were founded, as required by Civ.R. 10(D).
On November 13, 1998, the trial court granted the OSU defendants' two motions to dismiss and motion to strike, as well as the Fairview Hospital defendants' motion for summary judgment. The trial court filed a judgment entry journalizing its decision on December 9, 1998. Plaintiff timely appeals, assigning the following errors:
The court erred in granting:
Appellees' Motion to Dismiss, filed December 19, 1997
 Appellees' Motion to Strike Appellant's Claims Set Forth In Paragraphs 1, 2, 3, 5, 7-9, 11-66, 73-82, And [sic] 85-95, Filed March 18, 1998, Appellees' Second Motion To Dismiss, Filed March 18, 1998, Appellees' Motion For Summary Judgment, Filed March 18, 1998,
 The Entry Granting In Part And Denying In Part Appellees' Motion For A Protective Order Filed December 19, 1997.
 I. Plaintiff's Claims Against the OSU Defendants.
Plaintiff's first and third assignments of error will be addressed together, as both challenge the trial court's dismissing plaintiff's claims against the OSU defendants pursuant to Civ.R. 12(B)(6).
In reviewing the trial court's decision to dismiss plaintiff's claims against the OSU defendants for failure to state a claim pursuant to Civ.R. 12(B)(6), we do not defer to the trial court's decision, but must independently review plaintiff's complaint to determine if the dismissals were appropriate. McGlonev. Grimshaw (1983), 86 Ohio App.3d 279, 285.
Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. York v. Ohio StateHighway Patrol (1991), 60 Ohio St.3d 143, 144. In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. Mitchell v. Lawson Milk Co. (1989),40 Ohio St.3d 190, 192. at 193.
A. Plaintiff's breach of contract claims against the OSU Board of Trustees.
Plaintiff contends the trial court improperly dismissed his breach of contract claims against the OSU Board of Trustees (paragraphs 1, 2, 3, 4, 5, 6, 9, 13, 16, 83, and 95). As amended September 26, 1988, R.C. 3335.03(B) provides that "[e]xcept as specifically provided in division (A)(2) of section 2743.03 of the Revised Code, the court of claims has exclusive, original jurisdiction of all civil actions against the Ohio state university board of trustees." R.C. 2743.03(A)(2) provides in relevant part that the Court of Claims Act "* * * does not affect, and shall not be construed as affecting, the original jurisdiction of another court of this state to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief." Thus, civil actions against the OSU Board of Trustees, other than actions where only equitable relief is sought, must be brought in the Court of Claims. Cf. Willson v. Bd.of Trustees of The Ohio State Univ. (Dec. 24, 1991), Franklin App. No. 91AP-144, unreported (1991 Opinions 5884) (applying Schwarz v.Bd. of Trustees (1987), 31 Ohio St.3d 267 and former R.C. 3335.03
to determine jurisdiction). Here, plaintiff seeks relief only in the form of monetary damages on his breach of contract claims against the OSU Board of Trustees. Because subject matter jurisdiction over those claims rests exclusively in the Court of Claims, the trial court was without jurisdiction over the claims, and did not err in dismissing the claims.
B. State law claims against individual doctors.
The trial court also dismissed all of plaintiff's state law claims against Drs. Palomaki, Hutzler, Michener, Malone, Ivan, Linton, Kennedy, Paraiso, Belinson, Makii, and Kobak (paragraphs 8, 15, 18, 21, 23, 25, 26, 28, 31, 33, 35, 37, 38, 40, 42, 43, 45, 47, 49, 50, 52, 54, 56, 58, 60, 62, 64, 66, 67, 68, 69, 70, 71, 72, 73, 75, 77, 78, 80, 82, 84, 85, 87, 90, 92, 94) on the grounds that the doctors are personally immune pursuant to R.C. 9.86 and2743.02(F).
R.C. 9.86 confers limited, personal immunity upon officers and employees of the state. Norman v. Ohio State Univ.Hosp. (1996), 116 Ohio App.3d 69, 73. Pursuant to R.C. 2743.02(F), jurisdiction to make the initial determination of whether a defendant is entitled to personal immunity under R.C. 9.86 is vested exclusively in the Court of Claims. State ex rel. Sanquillyv. Lucas Cty. Court of Common Pleas (1991), 60 Ohio St.3d 78, 80. The trial court thus lacked jurisdiction to determine whether Drs. Palomaki, Hutzler, Michener, Malone, Ivan, Linton, Kennedy, Paraiso, Belinson, Makii, and Kobak were personally immune for their actions.
Where an action initially is brought in the court of common pleas against a defendant who is alleged by either party to have been an officer or employee of the state when the cause of action accrued, the court of common pleas properly should dismiss the action for lack of subject matter jurisdiction. Suver v.Morris (Jan. 8, 1991), Franklin App. No. 90AP-898, unreported (1991 Opinions 43). Because the issue of immunity was raised with respect to the state law claims against Drs. Palomaki, Hutzler, Michener, Malone, Ivan, Linton, Kennedy, Paraiso, Belinson, Makii, and Kobak, the trial court properly dismissed all of plaintiff's state law claims against them, albeit for the wrong reasons: dismissal should have been for lack of subject matter jurisdiction under R.C. 2743.02(F), not for failure to state a claim pursuant to Civ.R. 12(B)(6). The trial court's judgment is ordered revised to so reflect.
C. State law claims against the Cleveland Clinic.
Plaintiff's state law claims against the Cleveland Clinic (paragraphs 8, 10, 14, 17, 22, 24, 27, 29, 32, 34, 36, 39, 41, 44, 46, 48, 51, 53, 55, 57, 59, 61, 63, 65, 67, 68, 69, 70, 71, 72, 74, 76, 79, 81, 84, 86, 88, 91, 93) include fourteen claims for tortious interference with a contract, two claims for conspiracy to tortiously interfere with a contract, eleven claims for arbitrary and capricious grading, one claim for conspiracy to grade arbitrarily and capriciously, one claim for fraud, one claim for violation of doctor-patient confidentiality, and nine claims for libel, all premised on the theory that the Cleveland Clinic is vicariously liable for the conduct of the doctors on its staff who evaluated and graded plaintiff's performance as a medical student. The OSU defendants moved to dismiss, and the trial court dismissed, all but plaintiff's libel claims solely on the basis that the Cleveland Clinic was immune from liability for the doctors' conduct pursuant to R.C. 2305.25(A)(1), (2), and (5).
R.C. 2305.25(A)(1), (2), and (5) provide:
 (A) No health care entity and no individual who is a member of or works on behalf of any of the following boards or committees of a health care entity or of any of the following corporations shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the board, committee, or corporation:
 (1) A peer review committee of a hospital, a nonprofit health care corporation which is a member of the hospital or of which the hospital is a member, or a community mental health center;
 (2) A board or committee of a hospital or of a nonprofit health care corporation which is a member of the hospital or of which the hospital is a member reviewing professional qualifications or activities of the hospital medical staff or applicants for admission to the medical staff;
* * *
 (5) A peer review committee, professional standards review committee, or arbitration committee of a state or local society composed of doctors of medicine, doctors of osteopathic medicine, doctors of dentistry, doctors of optometry, doctors of podiatric medicine, psychologists, or pharmacists [.]
In moving for dismissal of plaintiff's claims under R.C.2305.25(A)(1), (2), and (5), the Cleveland Clinic argued immunity because some of the doctors who evaluated and graded plaintiff were members of the Student Review Subcommittee, the Clinical Academic Standing Committee, or the Academic Review Board, the academic committees and board which played a role in plaintiff's dismissal from OSU.
To establish its immunity under R.C. 2305.25(A)(1), (2), and (5), the Cleveland Clinic necessarily had to present evidence of factual matters outside the pleadings, such as evidence of the nature of the Student Review Subcommittee, the Clinical Academic Standing Committee, and the Academic Review Board, sufficient to show that the entities are committees or boards of the type granted immunity by R.C. 2305.25(A)(1), (2), and (5). Moreover, the Cleveland Clinic needed to show that the conduct for which plaintiff seeks to hold it vicariously liable was committed by the doctors while in the scope of their duties as members of the academic committees or board.
When considering a motion to dismiss brought pursuant to Civ.R. 12(B)(6), a court may consider only the averments contained in the complaint, not matters outside the pleadings. State exrel. Karmasu v. Tate (1992), 83 Ohio App.3d 199, 207. Because the determination of whether the Cleveland Clinic is immune under R.C.2305.25(A)(1), (2) and (5) requires proof of matters outside the record, the determination cannot be made on a motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6). Id. Accordingly, the trial court's decision to dismiss plaintiff's claims against the Cleveland Clinic for tortious interference with a contract, conspiracy to tortiously interfere with a contract, arbitrary and capricious grading, conspiracy to grade arbitrarily and capriciously, fraud, and breach of doctor-patient confidentiality must be reversed.
The Cleveland Clinic also moved to dismiss plaintiff's nine libel claims as filed outside the one-year statute of limitations set forth in R.C. 2305.11(A). A cause of action for libel accrues upon the first publication of the allegedly defamatory statement. Reimund v. Brown (Nov. 2, 1995), Franklin App. No. 95APE04-487, unreported (1995 Opinions 4618).
Plaintiff's libel claims against the Cleveland Clinic allege doctors on the Cleveland Clinic's staff made libelous statements which contributed to plaintiff's dismissal from medical school. All of the allegedly libelous statements for which plaintiff seeks to hold the Cleveland Clinic responsible were made, at the latest, by February 13, 1995, the date on which the Clinical Academic Standing Committee notified plaintiff that he would be dismissed from medical school unless he agreed to the committee's three conditions. Because plaintiff did not file his complaint until June 11, 1997, more than two years after the accrual of his libel claims against the Cleveland Clinic, the trial court properly dismissed those claims.
D. Plaintiff's Section 1983 Claims.
Plaintiff's eleven section 1983 claims (paragraphs 7, 11, 12, 19, 20), allege that plaintiff's right to privacy was violated by Dr. Jelly-Bowers, his right to free exercise of his religion was violated by the OSU Board of Trustees and Dr. Kantor, his right to due process of law was violated by Drs. Palomaki, Kantor, and McIlroy, and his right to free speech was violated by Drs. Shy, Bowyer, Hoekstra, Mauger, and St. John. Because plaintiff states in his brief that he has decided not to pursue his section 1983 claims against the OSU Board of Trustees and Dr. Kantor for violation of his right to free exercise of his religion, we do not address those claims.
Section 1983[1] provides a remedy for violations of substantive rights created by the United States Constitution or federal statute. Barnier v. Szentmiklosi (E.D. Mich. 1983),565 F. Supp. 869, 871, reversed in part on other grounds, (C.A.6, 1987), 810 F.2d 594, 597. In order to state a claim under section 1983, plaintiff must establish that: (1) the conduct in controversy was committed by a person acting under color of state law, and (2) the conduct deprived plaintiff of a federal right, either constitutional or statutory. Parratt v. Taylor (1981),451 U.S. 527, 535, overruled on other grounds; Daniels v. Williams
(1986), 474 U.S. 327, 330; 1946 St. Clair Corp. v. Cleveland
(1990), 49 Ohio St.3d 33, 34.
The trial court dismissed plaintiff's section 1983 claims on several grounds, including a determination that the claims all were filed outside the applicable two-year statute of limitations set forth in R.C. 2305.10. Plaintiff argues that the trial court erred, as the four-year statute of limitations set forth in R.C. 2305.09(D) is applicable to his section 1983 claims.
Because federal law does not provide a statute of limitations applicable to section 1983 actions, the applicable statute of limitations must be borrowed from the state in which the cause of action arose. See Wilson v. Garcia (1985),471 U.S. 261, 266. Recognizing that courts were grappling with the question of which state statute of limitations to use in section 1983 claims, the United States Supreme Court, for many years urged courts to apply the statute of limitations "most analogous" or "most appropriate" to the particular section 1983 action. Board ofRegents, Univ. of New York v. Tomanio (1980), 446 U.S. 478, 488;Johnson v. Railway Express Agency, Inc. (1975), 421 U.S. 454,462. That approach lead to confusion, as different statute of limitations were being applied to section 1983 actions depending on what common-law action the facts giving rise to the section 1983 claim most closely resembled. Owens v. Okure (1989),488 U.S. 235, 240. "Often the result had less to do with the general nature of § 1983 relief than with counsel's artful pleading and ability to persuade the court that the facts and legal theories of a particular § 1983 claim resembled a particular common-law or statutory cause of action. * * * Predictability, a primary goal of statutes of limitations, was thereby frustrated." Id.
Seeking to correct the uncertainty, in Wilson the court first concluded that the characterization of section 1983 claims for statute of limitation purposes is a question of federal law.Wilson at 268-269. The court further concluded that federal interests in "uniformity, certainty, and the minimization of unnecessary litigation" supported characterizing all section 1983 claims in the same way for statute of limitations purposes. Id. at 271-275. After undertaking a review of the legislative history and purpose of section 1983, the court concluded that all section 1983 claims are to be characterized as personal injury actions for statute of limitations purposes. Id. 276-280.
Wilson failed to completely eliminate disagreement over the proper statute of limitations for section 1983 claims. Okure, at 241. Wilson was helpful in states with only one statute of limitations applicable to all personal injury actions. However, in states such as Ohio with multiple statutes of limitations applicable to personal injury actions, a split soon arose over whether to apply the statute of limitations used to certain enumerated intentional torts, or the "general or residual" personal injury statute of limitations. Id. at 242. The Supreme Court resolved the disagreement in Okure when it held that where a state has multiple statute of limitations for personal injury actions, the "general or residual" statute of limitations for personal injury actions should be applied to section 1983 claims.Id. at 249-250.
Accordingly, the dispute in the present case revolves to whether R.C. 2305.10 or 2305.09(D) is Ohio's "general or residual" statute of limitations. While the OSU defendants contend the trial court correctly applied the two-year statute of limitations set forth in R.C. 2305.10, plaintiff argues that R.C. 2305.09(D) provides Ohio's general or residual statute of limitations. Although the Ohio Supreme Court has not addressed which Ohio personal injury statute of limitations constitutes the state's general or residual personal injury statute of limitations, the subject has been the topic of considerable discussion at both the state and federal level.
In Browning v. Pendleton (1989), 869 F.2d 989, 992, the United States Court of Appeals for the Sixth Circuit, sitting enbanc determined that R.C. 2305.10 is Ohio's general or residual personal injury statute of limitations. Browning, however, did not consider R.C. 2305.09(D), as the parties did not raise it as a possible choice. See LRL Properties v. Portage Metro Housing Auth.
(1995), 55 F.3d 1097, 1105, fn. 2 (acknowledging that "there might be a good argument" for concluding that R.C. 2305.09(D), rather than R.C. 2305.10, is Ohio's general or residual personal injury statute of limitations," but concluding the panel was bound by the Sixth Circuit's prior en banc decision in Browning).
Moreover, although the question of how to characterize section 1983 claims for statute of limitation purposes, and the question of whether Ohio's general or residual statute of limitations should be applied to section 1983 claims are questions of federal law, the question of which Ohio statute of limitations constitutes the state's general or residual statute of limitations is a question of state law. See Okure, supra; Bojac Corp. v.Kutevac (1990), 64 Ohio App.3d 368, 370 (declining to followBrowning).
In Weethee v. Boso (1989), 64 Ohio App.3d 532, this court determined that R.C. 2305.09(D) is the statute of limitations applicable to section 1983 claims, as it, rather than R.C. 2305.10, is Ohio's general or residual personal injury statute of limitations. Nonetheless, since Boso, this court has held that both R.C. 2305.10 and 2305.11(A) are the statutes of limitations applicable to section 1983 claims. Herdman v. Capretta
(Dec. 17, 1996), Franklin App. No. 96APE05-684, unreported (1996 Opinions 4860, 4864); Kent v. Natalucci-Persichetti (Mar. 22, 1994), Franklin App. No. 93APE11-1569, unreported (1994 Opinions 1006, 1010); Twine, M.D. v. Winkfield (Sept. 4, 1990), Franklin App. No. 90AP-150, unreported (1990 Opinions 3779, 3781); andTwine, M.D. v. Probate Ct. of Franklin Cty. (June 28, 1990), Franklin App. No. 89AP-1170, unreported (1990 Opinions 2780, 2783). None of those latter cases, however, addresses the pivotal issue of which Ohio statute of limitations constitutes Ohio's general or residual statue of limitations.
The other Ohio appellate districts which have addressed the issue of which Ohio statute of limitations constitutes Ohio's general or residual statue of limitations have split on the issue. In Bojac, supra, at 379, and Martin v. Adult Parole Auth. (Mar. 4, 1994), Marion App. No. 9-93-45, unreported, the Eleventh and Third Ohio Appellate Districts, respectively, determined that R.C.2305.09(D) is Ohio's general or residual personal injury statute of limitations. However, the First, Fifth, Seventh, Eighth, and Twelfth Ohio Appellate Districts have held that R.C. 2305.10
provides Ohio's general or residual statute of limitations. Stateex rel. Eckstein v. Midwest Pride IV (1998), 128 Ohio App.3d 1,14; Francis v. Cleveland (1992), 78 Ohio App.3d 593, 596; Archerv. Payne (Sept 17, 1999), Muskingum App. No CT-98-0043, unreported; Erkins v. Cincinnati Municipal Police Dept. (Oct. 23, 1998), Hamilton App. No. C-970836, unreported; Harman v. Gessner
(Sept 9, 1997), Mahoning App. No. 96 C.A. 123, unreported.[2]
Only Eckstein reached its result based upon an independent comparison of R.C. 2305.10 and 2305.09(D). Francis, Erkins,Archer, and Harman simply relied upon the Sixth Circuit's determination that R.C. 2305.10(A) is Ohio's general or residual statute of limitations. Further, Francis, like the Sixth Circuit in Browning, did not consider R.C. 2305.09(D) in determining which statute of limitations is Ohio's general or residual personal injury statute of limitations, as only R.C. 2305.11 and 2305.10
were raised by the parties.
Following a careful review of the differing positions set forth by the United States Sixth Circuit and the other Ohio appellate districts, we continue to believe that we correctly concluded in Boso that R.C. 2305.09(D) is Ohio's general or residual personal injury statute of limitations.
The plain language of R.C. 2305.09(D) and 2305.10(A) indicate that the former, rather than the latter, is Ohio's general or residual personal injury statute of limitations. R.C.2305.10 provides in relevant part that "* * * an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues." R.C. 2305.09(D) provides:
 An action for any of the following causes shall be brought within four years after the cause thereof accrued:
* * *
 (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10
to 2305.12, 2305.14 and 1304.35 of the Revised Code.
The express language of R.C. 2305.10 limits the provision's application to actions for "bodily injury or injuring personal property." The language of R.C. 2305.09(D), by contrast, applies the provision otherwise to all undelineated personal injury actions.
Our conclusion that R.C. 2305.09(D), rather than R.C.2305.10 provides Ohio's residual personal injury statute of limitations is supported by Okure. In discussing why a state's general or residual personal injury statute of limitations, rather than a state's statute of limitations for certain enumerated intentional torts, is more appropriately applied to section 1983 claims, the Okure court indicated that most states have multiple intentional tort provisions, with each provision applying only to certain enumerated intentional torts. Okure, supra, at 243. Therefore, the court concluded, adopting state intentional tort statutes of limitations as the statute of limitations applicable to section 1983 claims would "succeed only in transferring the present confusion over the choice among multiple personal injury provisions to a choice among multiple intentional tort provisions." Id. at 244. In further explaining this rationale, theOkure court cited R.C. 2305.10 as one of Ohio's several enumerated intentional tort statutes, id. at 243, suggesting the court did not believe R.C. 2305.10 to be Ohio's general or residual personal injury statute of limitations.
Because the conduct which gave rise to plaintiff's section 1983 claims occurred at the earliest during the fall of 1994, the four-year residual personal injury statute of limitations contained in R.C.2305.09(D) had not run when plaintiff filed his complaint on June 11, 1997. Accordingly, the trial court erred in dismissing plaintiff's section 1983 claims on statute of limitations grounds.
The trial court also dismissed plaintiff's section 1983 claims on the grounds that plaintiff's complaint failed to allege facts sufficient to survive the defense of qualified immunity, as required by Bettio v. Village of Northfield (N.D. Ohio 1991),775 F. Supp. 1545. The doctrine of qualified immunity shields public officials performing discretionary functions from liability for civil damages under section 1983 where their conduct did not violate clearly established federal rights of which a reasonable person would have known. Harlow v. Fitzgerald (1982),457 U.S. 800, 818.
In Bettio, the court applied a heightened pleading standard for section 1983 claims brought against public officials who may be entitled to qualified immunity, holding that to avoid dismissal for failure to state a claim, such a section 1983 claim must allege facts sufficient to overcome the defense of qualified immunity. Bettio, at 1551. While the Court of Appeals for the Sixth Circuit has adopted this heightened pleading standard, Veneyv. Hogan (C.A.6, 1995) 70 F.3d 917, 922, the majority of the Ohio courts of appeals have not. See, e.g., Asher Investments, Inc. v.Cincinnati (1997), 122 Ohio App.3d 126, 137, 138, fn. 6 (stating that application of the Sixth Circuit's heightened pleading standard for qualified immunity would be inconsistent with notice pleading). But, see, Patrick v. Wertman (1996), 113 Ohio App.3d 713,717 (dismissing a section 1983 claim pursuant to Civ.R. 12(B)(6) for failure to comply with Bettio). Moreover, immunity determinations are more properly dealt with on summary judgment, because often, as here, they require consideration of matters outside the pleadings. Asher, supra, at 138. The trial court thus erred when it dismissed plaintiff's section 1983 claims on the authority of Bettio.
Finally, the trial court dismissed plaintiff's section 1983 claims against Dr. Palomaki, concluding that plaintiff's complaint failed to allege Dr. Palomaki was acting "under color of state law" when he (1) denied plaintiff access to plaintiff's performance evaluations, and (2) took steps which led to the confiscation of plaintiff's property interest in his accumulated third-year medical school credits and in his ongoing medical education.
To satisfy the "under color of state law" element of a section 1983 claim, a plaintiff must show that the conduct complained of was taken pursuant to "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic (1941),313 U.S. 299, 326. Here, plaintiff's complaint alleges that in violating plaintiff's procedural due process rights, Dr. Palomaki was acting in his capacity as an OSU instructor. Those allegations are sufficient for purposes of Civ.R. 12(B)(6) to allege Dr. Palomaki was acting "under color of state law" when he committed the alleged constitutional violations. The trial court erred in dismissing plaintiff's section 1983 claims against Dr. Palomaki on the premise that plaintiff failed to allege Dr. Palomaki was acting under color of state law.
Accordingly, the trial court erred in dismissing plaintiff's section 1983 claims against Drs. Jelly-Bowers, Palomaki, Kantor, McIlroy, Shy, Bowyer, Hoekstra, Mauger, and St. John.
Given the foregoing, plaintiff's first and third assignments of error are sustained with respect to (1) plaintiff's claims against the Cleveland Clinic for tortious interference with a contract, conspiracy to tortiously interfere with a contract, arbitrary and capricious grading, conspiracy to grade arbitrarily and capriciously, fraud, and violation of doctor-patient confidentiality, and (2) his section 1983 claims for violation of his right to privacy, right to free speech, and right to due process.
E. The OSU defendants' motion to strike.
Plaintiff's second assignment of error asserts the trial court erred in granting the OSU defendants' motion to strike the claims stated in paragraphs 1, 2, 3, 5, 7-9, 11-66, 73-82, and 85-95 of plaintiff's complaint for plaintiff's failure to comply with Civ.R. 10(D). Plaintiff's second assignment of error is moot to the extent it arises out of claims which properly were dismissed for lack of jurisdiction or for failure to state a claim. Therefore, we limit our review of the stricken claims to those improperly dismissed.
The claims which remain at issue are (1) plaintiff's section 1983 claims against Drs. Jelly-Bowers, Palomaki, Kantor, McIlroy, Shy, Bowyer, Hoekstra, Mauger, and St. John alleging violations of plaintiff's right to privacy, right to free speech, and right to due process, and (2) plaintiff's claims against the Cleveland Clinic for tortious interference with a contract, conspiracy to tortiously interfere with a contract, arbitrary and capricious grading, conspiracy to grade arbitrarily and capriciously, fraud, and violation of doctor-patient confidentiality.
Civ.R. 10(D) provides as follows:
 When any claim or defense is founded on an account or other written instrument, a copy thereof must be attached to the pleading. If not so attached, the reason for the omission must be stated in the pleading.
Neither the OSU defendants in moving to strike, nor the trial court in granting the motion, indicated with any specificity which of plaintiff's claims were founded on which written instruments. Instead, the OSU defendants' motion to strike merely alleged that plaintiff's claims are "founded upon written instruments, including, but not limited to, a written psychological evaluation of Plaintiff, the Ohio State College of Medicine student handbook, letters from College of Medicine committees to plaintiff, written evaluations and performance reviews of Plaintiff and reports in Plaintiff's student file."
In fact, both plaintiff's section 1983 claims and his claims at issue against the Cleveland Clinic are not founded upon written instruments. Rather, those claims are founded on amendments to the United States Constitution, and common law tort and fraud principles, respectively. While the documents the OSU defendants allude to may be relevant to some of those claims as evidence or otherwise, the claims are not based on duties arising out of the instruments. Civ.R. 10(D) does not require that all documents which are relevant in any way to a claim be attached to the complaint. City of Fairlawn v. Fraley (Feb. 11, 1981), Summit App. No. 9827, unreported.
Thus, plaintiff's second assignment of error is sustained with respect to plaintiff's section 1983 claims alleging violations of plaintiff's right to privacy, right to free speech, and right to due process, and plaintiff's tortious interference with a contract, conspiracy to tortiously interfere with a contract, arbitrary and capricious grading, conspiracy to grade arbitrarily and capriciously, fraud, and doctor-patient confidentiality claims against the Cleveland Clinic.
II. Plaintiff's Claims Against the Fairview Hospital Defendants.
Plaintiff's fourth assignment of error challenges the trial court's granting summary judgment to the Fairview Hospital defendants on all of plaintiff's claims against them.
Normally, our review of a trial court's grant of summary judgment requires us to determine independently whether, viewing the evidence most strongly in favor of the non-moving party, no genuine issues of fact exist, the moving party is entitled to judgment as a matter of law, and reasonable minds could only reach a conclusion which is adverse to the non-moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65; Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711.
In the present case, however, plaintiff does not contend that genuine issues of fact exist or that the Fairview Hospital defendants were not entitled to judgment as a matter of law. Rather, plaintiff contends that summary judgment was inappropriate because the Fairview Hospital defendants and the trial court prevented him from presenting evidence which would have created genuine issues of fact. Specifically, plaintiff contends he was unfairly prevented from successfully opposing the motion for summary judgment by (1) the trial court's issuing a protective order on March 17, 1998, which prevented plaintiff from conducting any discovery of the OSU defendants pending the trial court's ruling on the OSU defendants' first motion to dismiss, and (2) the Fairview Hospital defendants' failure to respond to plaintiff's requests for admissions. Essentially, plaintiff argues that the trial court's discovery rulings so prejudiced his ability to oppose the motion for summary judgment that the trial court decision to grant summary judgment should be reversed.
Civ.R. 56(F) addresses the situation in which plaintiff claims to have found himself in opposing the Fairview Hospital defendants' motion for summary judgment, and it states:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
Pursuant to Civ.R. 56(F), a party who believes that it is unable to adequately oppose a motion for summary judgment by affidavit must submit an affidavit to the court stating the reasons why it is unable to present facts necessary to oppose the motion for summary judgment by affidavit. If the trial court finds that the affidavit sets forth sufficient reasons for the party's inability to oppose the motion for summary judgment by affidavit, the trial court may refuse to grant summary judgment, or order a continuance to permit the party to obtain affidavits or to conduct discovery. Stewart v. Seedorff (May 27, 1999), Franklin App. No. 98AP-1049, unreported (1999 Opinions 1398). Here, plaintiff never submitted an affidavit to the trial court pursuant to Civ.R. 56(F). The trial court thus was without authority to provide plaintiff with relief under Civ.R. 56(F). State ex rel. Coulversonv. Ohio Adult Parole Auth. (1991), 62 Ohio St.3d 12, 14.
Further, with respect to plaintiff's contention that the Fairview Hospital defendants did not respond to his requests for admissions, the record reveals that plaintiff never specified the forty requests for admissions to be answered, per the trial court's order granting in part the Fairview Hospital defendants' motion for protective order. Plaintiff's failure to do so in effect waived their responses, and plaintiff may not raise the issue for the first time on appeal. Carabello v. Carabello (Dec. 16, 1985), Clermont App. No. CA84-11-079, unreported.
Plaintiff's fourth assignment of error is overruled.
Plaintiff's fifth assignment of error asserts the trial court erred in granting the Fairview Hospital defendants' protective order and requiring them to respond to only forty of the six hundred seven requests for admission plaintiff served on them. Our resolution of plaintiff's fourth assignment of error renders this argument moot. Therefore, we decline to address plaintiff's fifth assignment of error. App.R. 12(A)(1)(c).
Having sustained plaintiff's first, second, and third assignments of error to the extent indicated, having overruled plaintiff's fourth assignment of error, and having determined plaintiff's fifth assignment of error to be moot, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part and reversed in part; case remanded.
PETREE and TYACK, JJ., concur.
[1] Section 1983 provides in relevant part as follows:"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."
[2] See, also, Gaston v. Toledo (1995), 106 Ohio App.3d 66;Dodrill v. Lorain Cty. Sheriff (1988), 53 Ohio App.3d 79; andFreshour v. Radcliff (July 20, 1993), Ross App. No. 1941, unreported, applying a statue of limitations other than R.C.2305.09(D) to section 1983 claims without determining whether the statute is Ohio's general or residual personal injury statute of limitations.
 MEMORANDUM DECISIONS