**ASHER INVESTMENTS, INC. et al., Appellants,**

**v.**

**CITY OF CINCINNATI et al., Appellees.**

[Cite as *Asher Investments, Inc. v. Cincinnati* (1997), 122 Ohio App.3d 126.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960687.

Decided Aug. 1, 1997.

128

*Manley, Burke, Lipton & Cook, Timothy M. Burke, W. Kelly Lundrigan* and *Rhonda S. Frey,* for appellants.

*Fay D. Dupuis,* City Solicitor, and *Mark Yurick,* Assistant City Solicitor, for appellees.

PAINTER, Presiding Judge.

In 1990, Danny Asher, sole owner and president of Asher Investments, Inc., opened "Prime Time," a nightclub in Clifton near the University of Cincinnati. Asher and Asher Investments, Inc. are the plaintiffs-appellants. For convenience, we refer only to Asher throughout this decision. Before opening Prime Time, Asher was an employee at the same facility for approximately twenty years, during which time it was also operated as a nightclub under other names, such as "Reflections," "The Lighthouse," and "Burgundy's." The nightclub's patrons were mostly white before Asher opened Prime Time.

Upon opening Prime Time, Asher changed the atmosphere of the club and the type of music played. Young blacks became the club's predominant customers. On Saturday nights, Prime Time would draw eight hundred to twelve hundred people. Asher asserts that when the club had a predominantly white clientele, it was open more nights per week, drew larger crowds, and had more liquor violations and disturbances, such as fights, which occurred both inside and outside the club. Asher further contends that when the patrons were predomi-

nantly white, large crowds would leave the club at closing, but the police were not present to force them from the sidewalk in front of the club.

Asher claims that the defendant-appellee city of Cincinnati has used its police force in a discriminatory and harassing manner, causing Prime Time's patronage to dwindle and eventually forcing Prime Time to close. In support, Asher claims that the police would not come to the club when the clientele was white unless they were called by the club's employees. If the police were summoned, at most only two squad cars would respond. However, after the clientele changed, often thirty police officers were stationed outside the bar. Mounted officers and riot police cordoned off the adjacent streets and "herded" blacks away from the nightclub at closing time.

Additionally, Asher claims that the city attempted to bill him for the expense of the police details stationed outside Prime Time on Saturday nights through the issuance of "Second Response Notices." These notices were apparently issued under Cincinnati Municipal Code ("CMC") 910–11, alleging that Asher had violated CMC 910–7, 910–8, or 910–9, Cincinnati's "loud noise" ordinances. However, because "First Response Notices" were never originally issued, upon Asher's appeal of the notices and the fees assessed, the city hearing officer held the notices invalid.

In 1994, Asher filed a complaint seeking damages and injunctive relief against the city and certain city employees in their official capacities based on the city's failure to renew Prime Time's dance hall license. Asher's claims against John Shirey, City Manager, and Daryl Cammerer, Treasurer, in their official capacities, and Asher's claims against the city will be addressed as one claim, because a suit against a municipality and a suit against a municipal officer acting in his official capacity are the same. *Brandon v. Holt* (1985), 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878; *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. The trial court granted a temporary restraining order to prevent the city from acting against the club until the issue of the dance hall license could be resolved. Asher filed an administrative appeal of the city's denial of the dance hall license; the administrative appeal was consolidated with the civil action.

In 1995, the city filed an action against Asher, alleging that Prime Time was a nuisance because of liquor-control violations. The nuisance action was also consolidated with Asher's original case. The trial court granted a temporary restraining order against Prime Time, allowing Asher to admit only patrons over the age of twenty-one, a policy which Asher had already voluntarily implemented. In Asher's answer to the nuisance charge, he counterclaimed for damages, as well as declaratory and injunctive relief, under Section 1983, Title 42, U.S.Code, based on events that had occurred during the period following the filing of his initial

action. Included were claims against Police Captain Phyllis Caskey in her individual capacity, brought under Section 1983, for violations of Asher's rights of due process and equal protection of the laws.

Apparently because of admitted liquor-control violations that occurred inside Prime Time, the parties agreed that Prime Time would cease operation as a "permitted liquor establishment," and that Asher would be granted time to sell the liquor license. The city then dismissed the nuisance claim, and Asher amended his original complaint, incorporating the counterclaims that he raised in his answer to the nuisance charge. The city moved to dismiss the amended complaint. The motion was denied with respect to claims against the city, but granted for the claims against Caskey in her individual capacity. The parties then agreed to terminate the administrative appeal of the city's refusal to renew the dance hall license. Finally, the trial court granted the city's motion for summary judgment on the remaining issues.

Asher brings two assignments of error, claiming that the trial court erred in (1) granting summary judgment in favor of the city where genuine issues of material fact exist for the Section 1983 claim concerning the city's violation of Asher's due process and equal protection rights, and (2) dismissing Asher's identical claims against Captain Caskey on the basis of qualified immunity where evidence supports Asher's contention that she violated clearly established constitutional rights, which a reasonable person would have known.

## I. Standing

The trial court granted summary judgment in favor of the city, in part, because it found that Asher, who is white, did not have standing to bring an action under Section 1983.[1] A civil action must be prosecuted by the real party in interest. See *State ex rel. Botkins v. Laws* (1994), 69 Ohio St.3d 383, 632 N.E.2d 897; Civ.R. 17(A). The doctrine of standing requires that a litigant be in the proper position to assert a claim, and that the party's injury must be within the zone of interests intended to be protected or regulated. *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 522 N.E.2d 464.

The seminal case of *Sullivan v. Little Hunting Park, Inc.* (1969), 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, has spawned a line of cases establishing that a nonminority plaintiff has standing under civil rights statutes to remedy his own

---

1. Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

injuries resulting from the defendant's discrimination against a protected class.[2] A white plaintiff has standing when he is asserting his own right to be free from the effects of racial discrimination. See, *e.g., Nesmith v. Alford* (C.A.5, 1963), 318 F.2d 110. However, a white plaintiff generally does not have standing solely to vindicate the rights of minorities who have suffered from racial discrimination. *Maynard v. San Jose* (C.A.9, 1994), 37 F.3d 1396.

While most of these cases dealt with standing under Section 1981, Title 42, U.S.Code, several courts have applied the principles to standing under Section 1983. See *Des Vergnes v. Seekonk Water Dist.* (C.A.1, 1979), 601 F.2d 9, vacated in part on other grounds (1981), 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76; *Scott v. Greenville Cty.* (C.A.4, 1983), 716 F.2d 1409; *Maynard v. San Jose.* In *Wilson v. N. Little Rock* (C.A.8, 1986), 801 F.2d 316, a white plaintiff, who owned a roller-skating rink, was granted standing under Section 1983 to challenge the harassment (a roadblock outside the rink) of black patrons by police, which resulted in a decrease in the plaintiff's business. See, also, *Puglisi v. Underhill Park Taxpayer Assn.* (S.D.N.Y.1996), 947 F.Supp. 673 (granting standing to white landlord to bring Section 1983 claim for selective enforcement of laws and housing codes based on tenants' race).

In *Yesteryears, Inc. v. Waldorf Restaurant, Inc.* (D.Md.1989), 730 F.Supp. 1341, the white directors of a corporation owning a nightclub were accorded standing under Section 1983. The directors claimed that the lessor of the club's building and the county liquor board conspired to prevent the club from selling alcoholic beverages. The goal of the conspiracy was to prevent the nightclub from catering to a black clientele; the ultimate result was a loss of profits and the closing of the club.

 Following factually similar cases like *Yesteryears* and *Wilson*, we conclude that Asher has standing under Section 1983 to redress injuries to his business allegedly caused by police harassment of his black patrons and himself. Asher claims that he suffered personal economic injury as a direct result of racially motivated discriminatory police activity against the patrons of Prime Time. The most appropriate plaintiff is Asher, as patrons of a nightclub do not have as tangible an interest in bringing suit. See *Yesteryears,* 730 F.Supp. 1341; *Wilson v. N. Little Rock,* 801 F.2d 316. The commercial operator is the most appropriate party to bring suit for such violations. More important, Asher is to be granted standing to vindicate violations of his own right to be free from discrimination.

---

2. See *DeMatteis v. Eastman Kodak Co.* (C.A.2, 1975), 511 F.2d 306, modified (C.A.2, 1975), 520 F.2d 409; *Faraca v. Clements* (C.A.5, 1975), 506 F.2d 956; *Winston v. Lear–Siegler, Inc.* (C.A.6, 1977), 558 F.2d 1266; *Parr v. Woodmen of the World Life Ins. Co.* (C.A.11, 1986), 791 F.2d 888.

See *Yesteryears,* 730 F.Supp. at 1355, citing *Scott v. Greenville Cty.,* 716 F.2d at 1415.

## II. The Appropriateness of Summary Judgment

### A. The Equal Protection Claim

■ To establish a claim under Section 1983, two elements are required: (1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.[3] *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 550 N.E.2d 456. Section 1983 creates no substantive rights, but provides a remedy for deprivation of federal rights established elsewhere. Section 1983 does not encompass official conduct that violates only state law; the statute is limited to deprivations of federal constitutional and statutory rights. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 637 N.E.2d 306. A plaintiff must identify those specific constitutional or statutory rights of which he has been deprived. Asher claims that the city's actions have deprived him of the equal protection of the laws and due process.

■ Municipalities and local government entities are considered "persons" under Section 1983. *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Local government entities and municipalities enjoy no immunity for compensatory damages for violations of rights in a Section 1983 action. See *Owen v. Independence* (1980), 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673. For a municipality to be liable, however, a plaintiff must show that an action under an official municipal policy or custom caused an injury. See *Jett v. Dallas Indep. School Dist.* (1989), 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598; *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 662 N.E.2d 1112. A municipality may not be held liable under Section 1983 simply on the basis of *respondeat superior. Id.; Monell v. Dept. of Social Serv.; Brown v. Fort Lauderdale* (C.A.11, 1991), 923 F.2d 1474.

■ "The purpose of the policy/custom requirement is to distinguish acts of a municipality from acts of its employees, as a municipality is only liable for actions in which the municipality is actually responsible." *Mayes v. Columbus* (1995), 105 Ohio App.3d 728, 743, 664 N.E.2d 1340, 1350. Liability for a municipality may be predicated on even a single decision, if it is an official response by the municipality to a given situation. See *Pembaur v. Cincinnati* (1986), 475 U.S.

---

**3.** The Ohio Supreme Court has explicitly stated that Ohio courts have jurisdiction over Section 1983 actions. See *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 595 N.E.2d 862.

469, 106 S.Ct. 1292, 89 L.Ed.2d 452. The United States Supreme Court stated that "a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." (Footnote omitted.) *Id.* at 481, 106 S.Ct. at 1299, 89 L.Ed.2d at 463–464. A plaintiff must prove that the municipality's deliberate conduct was the moving force behind the injury, and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of the Cty. Comm. of Bryan Cty. v. Brown* (1997), 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626.

Asher has produced evidence tending to show that the city had a policy, embodied in internal correspondence between the city and the police department, of increasing the police activity in front of Prime Time on nights when the club had large crowds. Asher has presented affidavits and depositions that may show the existence of a policy of selective enforcement of the laws, and selective use of the police power, based on race. The city has not pointed to any evidence in the record showing that the city did not choose an official course of action with respect to the situation at Prime Time.

 Summary judgment is proper if (1) no genuine issue of material fact remains to be resolved, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 639 N.E.2d 1189. The evidence is to be construed in the light most favorable to the nonmoving party. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904. We review the trial court's grant of summary judgment *de novo*. *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317.

 Under *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the moving party must first identify the part of the record that demonstrates the absence of a genuine issue of material fact regarding the nonmovant's claim. The city relies on Asher's admission, in his deposition, that law enforcement activity took place when the nightclub had a predominantly white clientele. However, Asher also makes clear in his deposition that the frequency and scope of police activity that occurred when the club had a white clientele were dwarfed by the police presence and activity that occurred after the nightclub attracted a black

clientele. The city has not demonstrated the absence of genuine issues of material fact regarding these assertions.

The unequal application of state law violates federal equal protection if "it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances." *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, 227; see, also, *Oyler v. Boles* (1962), 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446; *Freeman v. Santa Ana* (C.A.9, 1995), 68 F.3d 1180. Impermissible selective prosecution occurs where others similarly situated have not been prosecuted, and the prosecution is based on an impermissible motive, such as the persecution of a protected class. *Wayte v. United States* (1985), 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547; *United States v. Olvis* (C.A.4, 1996), 97 F.3d 739. Similarly, the use of the police force, in a disproportionate manner, to intimidate and harass an establishment and its patrons because of race violates the Equal Protection Clause.

Genuine issues of material fact exist concerning the intent and impact of the police activity. Asher claims a discriminatory effect from greater law enforcement activity at Prime Time than what occurred at the establishment when it had a white clientele. The city has not addressed Asher's assertion that the police improperly used "Second Response Notices," allegedly issued without a "First Response Notice," in an attempt to harass Asher. Asher also contends that the city tried to force him to pay for the added police details on Saturday nights based on these notices. Asher insists this was done in a concerted effort to force him to shut down a club that was frequented by blacks. In response, the city repeatedly informs us about Prime Time's liquor violations—without explaining how violations that occurred inside the club would have necessitated riot police, who allegedly harassed the exiting Prime Time customers.

Asher's deposition and affidavit support at least an inference that the police activity was race-related. The city has not pointed to evidence demonstrating the absence of a genuine issue of material fact concerning the rationale for the magnitude of the police activity outside Prime Time. The trial court erred in granting summary judgment to the city on the claim of equal protection violations brought under Section 1983.

### B. The Due Process Claim

In his Section 1983 claim, Asher also contends that the city violated his due process rights secured by the Constitution. He has not informed this court whether the alleged due process violation is procedural or substantive in nature. Asher claims that the city, through its harassment and intimidation, has caused Prime Time to cease operations, and has therefore deprived Asher of his right to

conduct a lawful business or pursue an occupation. Asher sued for economic damages—the loss of profits and goodwill of his business.

 Property is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265. We agree with Asher that he has a constitutionally protected property interest in running his business free from unreasonable and arbitrary interference from the government under the Due Process Clause. See *State v. Cooper* (1991), 71 Ohio App.3d 471, 594 N.E.2d 713; *Benigni v. Hemet* (C.A.9, 1988), 879 F.2d 473, 478, citing *Schware v. New Mexico Bd. of Bar Examiners* (1957), 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796; *Chalmers v. Los Angeles* (C.A.9, 1985), 762 F.2d 753.

 At the core of procedural due process is the grant of notice and a hearing—at a meaningful time and in a meaningful manner. *Armstrong v. Manzo* (1965), 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62. Due process ordinarily requires some type of hearing prior to the deprivation of a significant property interest. *Memphis Light, Gas & Water Div. v. Craft* (1978), 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30; *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556.

 The city alleges that because Asher only claims—and only has standing to claim—a denial of a property interest, he must allege and prove the inadequacy of state remedies to assert a claim under Section 1983. "To assert a claim under Section 1983, Title 42, U.S.Code and the Fourteenth Amendment for deprivation without due process of a purely economic interest, a plaintiff must allege and prove inadequacy of state remedies." *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 550 N.E.2d 456, syllabus; see, also, *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 513 N.E.2d 288; *Strongsville v. Terry Dev. Co.* (May 27, 1993), Cuyahoga App. Nos. 62057, 62061 and 62120, unreported, 1993 WL 180197.

The 1946 St. Clair Corporation, which owned "Porky's, Home of the Stars" ("Porky's"), sued the city of Cleveland for due process violations because a Cleveland police officer harassed Porky's customers by illegally ticketing and towing their cars in an attempt to drive Porky's out of business.[4] Although Asher claims that his economic injury was caused by a city policy designed to close down his business, rather than the unauthorized actions of a municipality's employee, the syllabus of *1946 St. Clair Corp.* appears controlling, regardless of whether a claim involves substantive or procedural due process.

---

4. We surmise that Porky's provided adult entertainment.

▆▆ The syllabus seems too broadly worded and not intended to apply to the facts *sub judice*. We would be inclined to rule that the syllabus is inapposite where a city policy is the force behind an economic deprivation. See *Brooks v. George Cty.* (C.A.5, 1996), 84 F.3d 157; cf. *Mertik v. Blalock* (C.A.6, 1993), 983 F.2d 1353; *Macene v. MJW, Inc.* (C.A.6, 1991), 951 F.2d 700; *Chalmers v. Los Angeles*, 762 F.2d 753; *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265. However, Ohio courts of appeals are charged with accepting and enforcing the law as it is pronounced by the Supreme Court of Ohio and may not change, modify, or ignore such law. We are constrained to follow the syllabus even if we disagree.

Following the syllabus, we hold that the trial court properly granted summary judgment to the city on Asher's due process claim under Section 1983. Asher did not allege or prove the inadequacy of state remedies. Asher only has standing to assert a deprivation of an economic interest; therefore, he cannot bring a Section 1983 claim asserting a violation of due process.

The first assignment is sustained with regard to the equal protection claim, but overruled with regard to the due process claim.

### III. Qualified Immunity

The trial court dismissed Asher's claims against Captain Caskey in her individual capacity based on qualified immunity.[5] In reviewing a dismissal of a complaint under Civ.R. 12(B)(6), we must resolve all doubts in favor of the non-moving party, and all material factual allegations of the complaint must be taken as true. Further, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery" before a motion to dismiss can be granted. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 524, 668 N.E.2d 889, 891, quoting *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.[6]

▆▆ Public officials who perform discretionary functions are entitled to be shielded from liability for civil damages in a Section 1983 claim if their conduct does not violate clearly established federal rights of which a reasonable person

---

**5.** The trial court did not explicitly dismiss the claims against Caskey in her official capacity. Any claims against Caskey in her official capacity will be treated as a claim against the city.

**6.** The Sixth Circuit has established a heightened pleading standard for Section 1983 actions against individual government officials where qualified immunity has been asserted as a defense. *Veney v. Hogan* (C.A.6, 1995), 70 F.3d 917, 922. Even if we abandoned "notice pleading" and adopted this standard, however, Asher has alleged sufficient facts to create a genuine issue as to whether Caskey in fact committed the acts that violated clearly established constitutional law.

would have known. *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 658 N.E.2d 814; *Piphus v. Blum* (1995), 108 Ohio App.3d 218, 670 N.E.2d 518; *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396; *Anderson v. Creighton* (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523; *Kittrells v. Perry* (Sept. 5, 1996), Cuyahoga App. No. 69445, unreported, 1996 WL 502153. "Where an official could be expected to know that certain conduct would violate constitutional or statutory rights, then qualified immunity does not attach." *Roe v. Hamilton Cty. Dept. of Human Serv.* (1988), 53 Ohio App.3d 120, 126, 560 N.E.2d 238, 243, citing *Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. at 2738, 73 L.Ed.2d at 411.

Asher asserts that Caskey knowingly used "Second Response Notices" in an improper manner to harass him and his patrons, because of the race of his patrons. Because the procedural posture of the case requires us to take Asher's allegations as true, we hold that he has stated a claim upon which relief can be granted. Asher's allegations are sufficient to state claims for an equal protection violation brought under Section 1983. If Asher is able to prove that Caskey knowingly and improperly used these notices to harass Prime Time's customers based on race, he can make out a case of violation of clear precedent under the Constitution. On the other hand, nothing in our decision in any way precludes Captain Caskey from re-raising the issue of qualified immunity by way of summary judgment when more of the facts have been discovered. It appears from the case law that issues of immunity are more generally handled on summary judgment than by motions to dismiss. See, *e.g., Cook v. Cincinnati,* 103 Ohio App.3d 80, 658 N.E.2d 814; *Piphus v. Blum,* 108 Ohio App.3d 218, 670 N.E.2d 518; *Carlton v. Davisson,* 104 Ohio App.3d 636, 662 N.E.2d 1112; *Edwards v. Buckley* (1995), 106 Ohio App.3d 800, 667 N.E.2d 423.

Again, however, we are constrained by the syllabus in *1946 St. Clair Corp.* Asher has not pleaded that state remedies are inadequate; therefore, he cannot claim a deprivation without due process of a purely economic interest.

We sustain the second assignment with regard to the equal protection claim, and overrule the assignment with regard to the due process claim.

## IV. Conclusion

We reverse the trial court's entry of summary judgment on Asher's equal protection claim against the city under Section 1983, but sustain the summary judgment entered on the due process claim. Similarly, we reverse the dismissal of the equal protection claim against Captain Caskey in her individual capacity

brought under Section 1983, but affirm the dismissal of the due process claim. This cause is remanded for further proceedings in accordance with law.

*Judgment reversed
and cause remanded.*

DOAN and MARIANNA BROWN BETTMAN, JJ., concur.