Appellant David Russo argues that Judge Anthony O. Calabrese, Jr. erred in granting summary judgment in favor of Appellee City of Cleveland ("City") on his claims of: (1) civil conspiracy; (2)42 U.S.C. § 1983 violation(s); (3) intentional infliction of emotional distress; and (4) respondeat superior. We disagree and affirm.
From the record below we glean the following: On August 13, 1994, at approximately 11:30 p.m., Russo, with his female passenger Randi Boyles, and Dennis Rock were operating motorcycles northbound in the inside lane on East 185th Street and stopped for a red traffic light at the intersection with Neff Road in Euclid. When the light turned green for East 185th traffic, Russo and Rock began to accelerate and a black sport utility vehicle, ("SUV"), immediately to the rear of Russo, drove left of center across the double yellow lines, passed Russo and veered sharply to the right returning to the northbound inside lane. This action caused Russo to drive off the road. Russo was determined to obtain the license number of this black SUV, left his passenger, Boyles, at the scene and, in the company of Rock, pursued the vehicle. The vehicle turned right onto Cherokee Road, five blocks from Neff, then turned down several side streets, and came to a rest in the middle of a street with its lights off. Russo and Rock stopped their motorcycles behind what they could now identify as a Ford Explorer, but did not dismount. Russo claimed the driver of the Explorer, later identified as Richard Gugliotta, jumped out of his car brandishing a gun and came towards him and Rock. Gugliotta slapped Russo on the helmet, waved the gun in Russo's face, uttered obscenities, and struck Russo's helmet again, but this time with the hand holding the gun. Russo claimed Gugliotta then ordered him and Rock to leave the area, which they did, but only after noting the license plate number and a sticker on the plate used by police officers.
Russo claimed he and Rock went to the Euclid Police Department to report this incident, returned to the scene with the police and were advised that the incident scene was located within Cleveland city limits. Russo called the Cleveland Police Department and a patrol car responded. He described the incident and told the officers that he wanted to press charges against the driver of the Explorer. Following a computer check of the license number, the officers informed Russo that the owner of the Explorer appeared to be a Cleveland police officer, that Russo's allegations would be investigated and, if they were serious in nature, charges would likely be filed.
Lt. Henry Tekancic, the officer in charge of the Professional Conduct and Internal Review Unit (PCIR), was assigned the case and confirmed that the Explorer did belong to Officer Gugliotta and requested Russo to come to PCIR for a statement. Russo, accompanied by Rock and Boyles, complied and, as a result, he and Boyles answered questions and signed the interview sheets. Rock was advised he could not write out any statement but could only answer questions, waited for about three hours, and then left. He was never questioned by anyone from PCIR.
Gugliotta initially refused to make a statement, but later appeared with counsel and the president of his union, and complied. Cindy Walters, Gugliotta's passenger at the time of the incident, also gave a statement. Gugliotta claimed that on August 31, 1994, while stopped at the traffic light on East 185th Street and Neff Road, two motorcycles passed by his vehicle, one rider was alone and the other with a passenger, and were driving erratically with the lone motorcyclist popping wheelies. Fearing for his safety and that of his passenger, Gugliotta then accelerated and passed the motorcycles on the left, and made a sharp right turn onto Kildeer, four blocks north of Neff Road, where his home was located. He then noticed the motorcycles were following him and, to avoid them, turned down several side streets and came to a stop. One of the motorcycles then pulled up to his window, and the driver yelled at Gugliotta to exit the vehicle so he could kick his ass. Gugliotta then reached for his secondary weapon, left his vehicle and identified himself as a police officer. Russo approached him and Gugliotta put his open hand on Russo's helmet and told him to "get the f*** out of here," and thereafter both the cyclists left. Gugliotta also stressed that at no time did he ever raise his weapon and it never left his side.
Tekancic stated that while an officer is under investigation, PCIR will investigate other complaints filed with PCIR but, as a policy, it will not ask either the Criminal Investigation Unit (CIU), or the Office of Professional Standards (OPS), about any prior complaints filed against an officer. Tekancic, therefore, did not know of the six complaints of record, and three prior complaints for harassment within one year of the Russo incident, filed against Gugliotta. Tekancic noted that a deciding factor in whether to refer a complaint filed with POIR for prosecution is the existence of an independent corroborating witness. On October 25, 1994, Tekancic determined Russo's complaint to be unfounded, ended his investigation, and presented his findings to Cleveland City Prosecutor Carolyn Watts Allen.
Allen met with Russo and Rock and received their description of the events of the evening in question, and stated that all prior complaints, as well as the existence of any independent corroborating testimony, would play a key role in her determination whether to pursue criminal charges. Subsequently, Allen met with Russo and Rock to inform them she believed that the witness testimony coupled, with all other extrinsic factors, was not substantial enough to pursue criminal charges against Gugliotta.
After August 12, 1994, Russo was diagnosed with, and began receiving treatment for post-traumatic stress disorder. He was still receiving treatment up to the time of the filing of this appeal.
On July 25, 1995, Russo filed a complaint against the City of Cleveland, and Officer Richard Gugliotta, individually, alleging seven causes of action. In counts one through three, Russo asserted Gugliotta, acting within the course and scope of his employment with the city, was liable to him for assault, battery, and intentional infliction of emotional distress. Counts four through seven, are his claims against the City alleging civil conspiracy, 42 U.S.C. § 1983 violations, intentional infliction of emotional distress and respondeat superior.
On August, 16, 1996, the City and Gugliotta filed a motion for summary judgment which was denied. An appeal from that decision to this Eighth Appellate District by the City and Gugliotta was dismissed in Russo v. City of Cleveland (July 31, 1997), Cuyahoga App. No 72276, unreported.
On May 26, 1998, the City filed a second motion for summary judgment based solely on Russo's claims against it in counts four through seven. In the July 22, 1998, journal entry granting the motion, the judge noted that the claims against Gugliotta remained pending. On August 6, 1998, the judge amended his order to include "* * * there is no just reason for delay pursuant to Civil Rule 54(B)". This appeal followed.
Russo's sole assignment of error claims:
 THE TRIAL COURT ERRED WHEN GRANTING SUMMARY. JUDGMENT IN FAVOR OF THE CITY OF CLEVELAND.
We review the instant assignment of error de novo. Brown v.Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153, 1158. See, also, Soltis v. Wegman, Hessler, Vanderburg O'toole (Feb. 13, 1997), Cuyahoga App. No. 69602, unreported. In an action for summary judgment, the court is compelled to affirm provided that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence and the inferences to be drawn therefrom in favor of the non-moving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant. Civ.R. 56(C); Zivich v. Mentor Soccer Club, Inc.
(1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, 204. Summary judgment can only be granted if the entire record demonstrates no genuine issue of material fact, and the non-movant is entitled to judgment as a matter of law. Civ.R. 56, Zivich, supra.
Russo claims that Gugliotta's multiple complaint history and the lack of administrative punishment for them, coupled with the City's failure to track and maintain proper records within each department of these complaints, was sufficient evidence from which a reasonable jury could infer that the City knew of and acquiesced to a custom of the tacit use of excessive force by its officers.
The City counters that Russo failed to present sufficient evidence to prove that any policy or custom of the City was the moving force behind Guliotta's actions.
Section 1983, Title 42 U.S. Code provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.
Section 1983 creates no substantive rights. Baker v. McCollan
(1979), 443 U.S. 137. Rather "Section 1983 provides a remedy for violations of substantive rights created by the United States Constitution and federal statute." Roe v. Franklin County (1996),109 Ohio App.3d 772, 778, 673 N.E.2d 172. In order to prevail on a claim under Section 1983, a plaintiff must establish: "(1) that the conduct in controversy was committed by a person acting under color of state law, and (2) that the conduct deprived plaintiff of a federal constitutional or statutory right." Id., see, also, 1946St. Clair Corp. v. Cleveland (1990), 49 Ohio St.3d 33. To prove the "color of state law" prong, it must be shown that "the conduct complained of was taken pursuant to "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Roe, supra, quoting UnitedStates v. Classic (1941), 313 U.S. 299, 326, 61 S.Ct. 1031, 1043.
While local governments are "persons" subject to suit under Section 1983, municipal liability under 1983 cannot rest solely on the doctrine of respondeat superior. Monell v. Dept. of SocialServices City of New York. (1978), 436 U.S. 658, 690. In order to find a local government liable under Section 1983, it must be shown that a policy or custom of the governmental entity was the drivingforce behind the constitutional violation. Polk County v. Dodson
(1981), 454 U.S. 312, 326. A government policy exists when a person possessing final authority to establish municipal policy regarding the action in question issues a proclamation, rule, or edict. Beck v. City of Pittsburgh (C.A.3 1996), 89 F.3d 966, 971. A government custom exists when government employees engage in a practice, not expressly authorized, with such persistence that it can be said that the policy making officials were placed on actual or constructive notice of said practice, and failed with "deliberate indifference" to correct the practice. Bordanaro v.McLeod (C.A.1 1989), 871 F.2d 1151, 1156, 1161.
Russo relies upon Asher Investments, Inc. v. Cincinnati (1997,122 Ohio App.3d 126, 701 N.E.2d 400, and Beck v. City of Pittsburgh
(3rd Cir. 1996), 89 F.3d 966, to buttress his position. In Asher,supra, Cincinnati had a policy of increasing police activity in front of night clubs where blacks were the predominant customers.In Beck, supra, there was evidence that the city and policy makers tacitly approved the use of excessive force by its police officers because it did not have a procedure whereby its officers were disciplined or subject to review for complaints of excessive force against its citizens.
In the present case, however, Russo failed to offer any evidence that a governmental policy or custom was the driving or "moving force" behind the alleged assault by Gugliotta. Construing Russo's claims in his favor, there is no viable avenue under which the City may be found liable under Section 1983.
Russo further argues that the judge erred in finding his tort claims against the City without merit because it is not immune from such claims under R.C. 2744.02(A)(1). Russo maintains that Gugliotta's actions, coalesced with the City's "cover up", is intentional conduct in which the City engaged in a conspiracy and ratified his wrongful acts and, under respondeat superior, the City has incurred liability.
The City maintains that Ohio law confers immunity for governmental functions such as "the provision or nonprovision of police, fire, emergency medical, ambulance and rescue services or protection." R.C. 2744.02(C)(2)(a). It argues that its investigation into Gugliotta's actions falls within this category and, since none of the five enumerated exceptions from immunity found in R.C. 2744.02(B) apply, the City remains immune.
Russo's entire argument supporting the viability of his tort claims against the City rests upon Osborne v. Lyles (1992),63 Ohio St.3d 326, 587 N.E.2d 825, where liability could be imposed upon the City under the theory ofrespondeat susperior. In Osborne, the Supreme Court held that whether an off-duty police officer who, following an auto accident, assaulted a bystander and arrested him, was within the course and scope of his employment, to be generally a jury question because reasonable minds could conclude 1) he attempted to assume control over an accident scene, and 2) attempted to complete or completed an arrest. This case, however, is not dispositive because it involved a 1984 incident and Russo's claims are governed by the provisions of R.C. 2744 — Ohio's Political Subdivision Liability Act of 1985.
R.C. 2774.02 [2744.02] provides in pertinent part:
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
A "governmental function" is defined in R.C. 2744.01(C) which provides in pertinent part:
 "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 (2) A "governmental function" includes, but is not limited to, the following:
 (a) The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection; * * * *
R.C. 2744.02(A)(1) clearly states the immunity afforded a political subdivision is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in R.C.2744.02(B). Hill v. Urbana (1997), 79 Ohio St.3d 130,679 N.E.2d 1109. However, these exceptions are also not absolute, as immunity can be re-established if the political subdivision can successfully argue that one of the defenses contained in R.C.2744.02(B) or R.C. 2744.03 applies.
Subject to the provisions of R.C. 2744.02 and R.C. 2744.03 the City would be liable, with some express exceptions, for its employee's: (1) negligent operation of a motor vehicle; (2) negligent performance of a proprietary function; (3) failure to keep its public ways open and free from defects and nuisances; (4) negligence occurring in public buildings; and (5) liability imposed by statute.
In the instant case the internal investigation and discipline procedures of the City's Police Department clearly falls under the category of "governmental functions." Russo has not alleged that any exceptions under R.C. 2744.02(B) that would apply to the facts of this case and, as a result, immunity of the City is established under R.C. 2744.02(A). McCloud v. Nimmer (1991), 72 Ohio App.3d 533, 595 N.E.2d 492. Hazley v. City of Akron (Jul. 22, 1998), Summit App. No. 18756, unreported. The judge was correct in granting summary judgment in favor of the city on Russo's claims based upon his claims of emotional distress and respondeat superior.
Neither Russo's brief in opposition to the city's motion for summary judgment nor his appellate brief discuss the theory underlying his allegation that the City engaged in a civil conspiracy against him. If such "conspiracy" relates to his claims for violations of his civil rights under 42 U.S.C. § 1983, we found no merit to that argument. To support a claim of civil conspiracy, Russo must prove a malicious combination of two or more person where there is an injury to person or property and there exists an unlawful act independent of an actual conspiracy. Universal Coach,Inc. v. New York City Transit Auth., (1993) 90 Ohio App.3d 284,292, 629 N.E.2d 28, 33. The fact that Gugliotta was not prosecuted or disciplined for his actions in this case, does not, by itself, prove that genuine issues of material fact exist with regard to this claim, nor does Russo present any facts that would remove the City's mantel of immunity under R.C. 2744.02 or R.C. 2744.03. SeeMiskinis v. Chester Twp. Park Dist. (1996), 112 Ohio App.3d 466,679 N.E.2d 39. Russo's assignment of error is overrulled.
Judgment affirmed.
It is ordered that the appellee recover from appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER. A.J. AND LEO N. SPELLACY. J., CONCURRING INJUDGMENT ONLY.
 ________________________ ANNE L. KILBANE, JUDGE