[Cite as *Youngstown v. Carrier Servs. Group, Inc.*, 2026-Ohio-1032.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

CITY OF YOUNGSTOWN,

Plaintiff-Appellant,

v.

CARRIER SERVICES GROUP, INC., ET AL.,

Defendants-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0071**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CV 881

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in Part, Reversed in Part, and Remanded.

---

*Atty. Steven K. Kelley*, *Atty. Frank H. Scialdone*, and *Atty. Sarah S. Chiappone*, Mazanec, Raskin & Ryder Co., L.P.A. for Plaintiff-Appellant and Third-Party Defendants-Appellants and

*Atty. Stephen J. Pruneski*, Law Office of Stephen J. Pruneski, LLC, for Defendant-Appellee.

Dated: March 25, 2026

**HANNI, J.**

{¶1}  Plaintiff-Appellant, the City of Youngstown (the City), and third-party Defendants-Appellants, Jamael Tito Brown, Jim Murray, and Chuck Shasho (the City employees), appeal from a Mahoning County Common Pleas Court judgment denying their motion for summary judgment and finding that they are not entitled to political subdivision immunity or qualified immunity on the claims of Defendant-Appellee, Carrier Services Group, Inc. (CSG).

{¶2}  Because there are no tort claims raised against the City, it is not entitled to political subdivision immunity under R.C. 2744.02, which provides political subdivisions immunity from tort claims.  Thus, the trial court was correct in denying the City's motion for summary judgment, albeit for the incorrect reason.  And because CSG did not meet its burden in demonstrating the City employees were not entitled to federal qualified immunity, the trial court should have granted summary judgment in favor of the City employees.  Therefore, the trial court's judgment is affirmed in part and reversed in part.

{¶3}  Since sometime prior to 2014, the City has owned the building located at 20 Federal Street in Youngstown (the Property).  CSG is a company engaged in the business of telecommunications asset recovery and supply for phone companies.

{¶4}  In 2014, the City's Board of Control executed a lease agreement (the Lease) with CSG for office space located in the Property (the leased premises).  The Lease term was to commence October 1, 2014 and run through September 30, 2020.  The Lease provided that CSG, at its sole option, could renew the Lease for one five-year term by providing written notice of its intent to do so to the landlord 90 days before the end of the current Lease term (which would have been by July 2, 2020).

{¶5}  CSG did not provide written notice of its intent to renew by July 2, 2020.  It was not until an October 7, 2020 letter (after the Lease had already expired) that CSG expressed its intent to renew in writing.  The letter was purportedly signed by an administrative assistant in the City's Building and Grounds Department, whom the City states did not have authority to sign to renew the Lease.  In reliance on this letter, CSG continued to occupy and rent the leased premises, sending the City yearly rental checks.

{¶6}  In June 2022, the City was awarded a remediation grant.  At the time, the City had numerous tenants renting space in the Property, in addition to CSG.  Because

of this remediation, the City began vacating its tenants from the Property.

{¶7}   On January 3, 2023, the City posted an eviction notice on CSG's door at the leased premises.

{¶8}   On May 11, 2023, the City filed a forcible entry and detainer action to evict CSG.  On June 6, 2023, CSG filed its answer and counterclaim against the City alleging claims for declaratory judgment and breach of contract.

{¶9}   The eviction claim was heard before a magistrate.  The magistrate made the following findings of fact and conclusions of law.  CSG did not properly renew the Lease.   Therefore, the Lease expired on its own terms on September 30, 2020.  CSG then became a month-to-month tenant and was entitled to 30-days' prior written notice of the cancellation of the tenancy, which the magistrate found the City did not provide.  Thus, the magistrate denied the City's claim for a forcible entry and detainer.  But the magistrate stated the City could proceed with eviction proceedings after perfecting notice as to the cancellation of the Lease in accordance with the law.  CSG filed objections to the magistrate's decision.

{¶10} On August 24, 2023, the City gave CSG 30-days' notice that it was terminating the Lease.  It also attempted to return rent checks to CSG.  Despite the notice, CSG remained on the leased premises claiming it was still a tenant under the Lease.  According to the City, when CSG did not vacate the premises, the City resorted to "self-help" by removing CSG's equipment and demolishing the space.  According to CSG, the City and its contractors piled debris in front of the leased premises, allowed construction debris to damage its computer equipment, cut CSG's fiber optic lines, terminated CSG's electrical service, and otherwise destroyed the leased premises.

{¶11} On December 6, 2023, the trial court overruled CSG's objections, adopted the magistrate's decision, and entered judgment denying the City's forcible entry and detainer claim.  The court stated that the City could proceed with eviction proceedings after perfecting notice as to the cancellation of the Lease in accordance with the law.

{¶12} Subsequently, on December 21, 2023, CSG filed a motion to amend its counterclaim and add third-party claims.  The court granted the motion.  And on January 8, 2024, CSG added claims against Defendants, MS Consultants, Inc. (MS Consultants) and Daniel A. Terreri & Sons, Inc. (Terreri), for tortious interference with a contract,

conversion, and property damage. MS Consultants and Terreri were the contractors on the demolition/renovation project.

{¶13} It also added three City employees as Defendants: then-Mayor Jamael Tito Brown; capital project engineer Jim Murray; and deputy director of public works Chuck Shasho (the City employees). The only claim against the City employees was for a violation of 42 U.S.C. §1983. This claim alleged the City "embarked on a purposeful, intentional, and malicious plan" to remove CSG from the Premises by such actions as: (1) allowing construction debris to cave-in the entrance to the Premises and allowing construction dust and debris to damage CSG's computer equipment; (2) cutting CSG's fiber optic lines; (3) cutting off the power supply; (4) destroying and removing the walls and doors of the Premises; (5) destroying computer equipment; and (6) depriving CSG of its property interest in the Premises. The claim asserted these actions were undertaken by the City employees and that the City employees' conduct "was taken outside the scope of any possible authority or job duties . . . rendering them personally liable."

{¶14} The City and the City employees filed a motion for summary judgment on October 30, 2024.[1] They asserted they were entitled to statutory immunity under R.C. 2744 and federal qualified immunity from CSG's claims. They also argued the trial court had already found there was no valid lease, the City properly used self-help, CSG was not pursuing a tortious interference claim against them, CSG failed to adequately plead a §1983 claim, and Terreri was not entitled to indemnification from the City.

{¶15} CSG filed a memorandum in opposition arguing numerous genuine issues of material fact existed to preclude summary judgment. In part, CSG argued the fact that a government entity is the owner of property that it leases to third parties cannot be changed from a proprietary function into a governmental function by virtue of obtaining funds from a public source to make improvements to the property.

{¶16} The trial court denied the City Appellants' motion for summary judgment. Relevant to this appeal, the trial court found that neither the City nor the City employees were entitled to any type of immunity.

---

[1] MS Consultants and Terreri also filed motions for summary judgment but they are not relevant to this appeal.

{¶17} As to the City, the trial court found:

[T]he City did not use 20 Federal Place for any governmental purpose. They took possession of a commercial office building and leased it to private parties. No services of the City of Youngstown were performed in or from the building. The City terminated over twenty (20) leases by negotiation before they commenced their project. The subsequent receipt of funds for work on a building used for non-government purposes does not change the use of the building to a governmental function. At one point, the City admitted it had not made contact with CSG about their Lease.

Thus, the court found the City was not entitled to statutory immunity pursuant to R.C. Chapter 2744 as a bar to CSG's claims.

{¶18} As to the City employees, the court found:

The City identified Shasho as the individual who made the decisions to cut the electric power to CSG's Lease Premises, cut the fiber optic lines used by CSG, and destroy and/or remove the Lease Premises. All of these actions were condoned and authorized by Mayor Brown. Jim Murray was the person who took steps to communicate with the City's directions to the subcontractors to make sure they followed through with the directives. As such, there are issues of fact which prevent the Court from summarily concluding that the actions of the individual employees of the City did not violate statutory constitutional rights and are protected by qualified immunity. The City's Motion on those grounds is denied.

Thus, the court found the City employees were not entitled to qualified immunity.

{¶19} The trial court also found that issues of material fact existed as to CSG's conversion claim and that the City had moved for summary judgment on this claim. Significantly, however, CSG did not assert the conversion claim against the City or the City employees. CSG only asserted the conversion claim against MS Consultants and Terreri.

{¶20} Finally, the trial court noted that CSG had abandoned its claim for tortious interference with a contract. Thus, the court granted summary judgment in favor of the

City Appellants on this claim.  The court otherwise denied the City Appellants' motion for summary judgment, finding genuine issues of material fact.

{¶21}  The City Appellants filed a timely notice of appeal on July 23, 2025.

{¶22}  An appellate court reviews a summary judgment ruling de novo.  *Comer v. Risko*, 2005-Ohio-4559, ¶ 8.  Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶23}  A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C).  The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C).  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  A "material fact" depends on the substantive law of the claim being litigated.  *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

{¶24}  "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim."  *Dresher*, 75 Ohio St.3d at 296.  The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action."  Civ.R. 56(C).

{¶25}  The City Appellants now raise two assignments of error for our review.  Their first assignment of error states:

> THE LOWER COURT ERRED BY DENYING APPELLANTS THE CITY OF YOUNGSTOWN, MAYOR JAMAEL TITO BROWN, JIM MURRAY AND CHUCK SHASHO THE BENEFIT OF IMMUNITY UNDER CHAPTER 2744 OF THE OHIO REVISED CODE.

{¶26}  Generally, a trial court's denial of a summary judgment motion is not a final, appealable order.  But in this case, it is a final order.  Here, the City Appellant's motion

for summary judgment was based in part on the premise of governmental immunity.  The Ohio Supreme Court has held:  "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)."  *Hubbell v. City of Xenia*, 2007-Ohio-4839, at the syllabus.  Moreover, "R.C. 2744.02(C) permits a political subdivision to appeal a trial court order that denies it the benefit of an alleged immunity from liability under R.C. Chapter 2744, even when the order makes no determination pursuant to Civ.R. 54(B)."  *Sullivan v. Anderson Twp*., 2009-Ohio-1971, ¶ 13.

{¶27}  The City Appellants first argue that the trial court erred by denying summary judgment to the City on a conversion claim that was never alleged against the City.  CSG does not contest this.

{¶28}  In its amended counterclaims and third-party complaint, CSG raised a conversion claim only against MS Consultants and Terreri.  (Jan. 8, 2024 Defendant's Amended Counterclaims and Third-Party Complaint).  It did not assert this conversion claim against the City.  Still, the trial court found that genuine issues of material fact existed on the conversion claim against the City.  This was error.  Because CSG never raised a conversion claim against the City, there can be no judgment denying the City summary judgment on this claim.  Likewise, there can be no judgment against the City for conversion, as judgment on this claim was never sought.

{¶29}  Next, the City Appellants argue the trial court failed to grant the City political subdivision immunity pursuant to R.C. Chapter 2744.  They specifically argue the court failed to address R.C. 2744.01(C)(2)(g) and (q) defining "governmental functions."  The City Appellants go on to argue that CSG did not establish any exception to the City's presumption of statutory immunity.  The only exception that could arguably apply, the City Appellants contend, is found in R.C. 2744.02(B)(2) and provides that political subdivisions are liable for the negligent performance of acts by their employees with respect to proprietary functions.  The City Appellants argue they engaged in governmental functions, not proprietary functions in evicting CSG and remediating the Property.

Case No. 25 MA 0071

{¶30} In reply, CSG argues the City is not entitled to political subdivision immunity under R.C. Chapter 2744. It asserts the City's control of the Property was not a governmental function but instead was a proprietary function.

{¶31} Both parties' arguments under this assignment of error operate under the mistaken premise that R.C. Chapter 2744 immunity applies to contract claims. This is not the case.

{¶32} The trial court found that the City is not entitled to immunity based on the R.C. 2744.02(B)(2) exception. Pursuant to R.C. 2744.02(B)(2), political subdivisions are liable for "negligent performance of acts by their employees with respect to proprietary functions." Thus, the trial court, like the parties, mistakenly applied R.C. Chapter 2744 in this matter.

{¶33} R.C. Chapter 2744 is titled "Political Subdivision *Tort* Liability." (Emphasis added). By its title, the provisions and immunity provided for in Chapter 2744 only apply to tort claims. Moreover, R.C. 2744.09(B) specifically provides: "This chapter does not apply to, and shall not be construed to apply to, the following . . . Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability[.]"

{¶34} In this case, CSG did not have any tort claims pending against the City when the City filed its motion for summary judgment.

{¶35} In its Amended Counterclaims and Third-Party Complaint, filed January 8, 2024, CSG raised four claims against the City: Count 1 (seeking a declaratory judgment that it validly exercised the renewal term of the Lease); Count 2 (breach of contract); Count 3 (breach of contract); and Count 7 (violation of 42 U.S.C. §1983).

{¶36} CSG had also raised a tort claim against the City, MS Consultants, and Terreri: Count 4 (tortious interference). But CSG later abandoned this claim. (June 24, 2025 JE p. 7). And CSG raised two tort claims against MS Consultants and Terreri: Count 5 (conversion); and Count 6 (personal property damage). But it did not assert these claims against the City.

{¶37} Thus, the only claims that exist against the City are for declaratory judgment on the Lease, breach of contract, and a violation of 42 U.S.C. §1983 - none of which are tort claims.

**{¶38}** Based on the above, we agree with the trial court's denial of the City's motion for summary judgment, albeit for different reasons. An appellate court may affirm the trial court's grant of summary judgment for reasons that are different from those put forth by the trial court. *DeLost v. Ohio Edison*, 2012-Ohio-4561, ¶ 15 (7th Dist.).

**{¶39}** Accordingly, the City Appellants' first assignment of error is without merit and is overruled.

**{¶40}** The City Appellants' second assignment of error states:

THE LOWER COURT ERRED BY DENYING FEDERAL QUALIFIED IMMUNITY TO THE INDIVIDUAL APPELLANTS MAYOR JAMAEL TITO BROWN, JIM MURRAY AND CHUCK SHASHO.

**{¶41}** First, we must address CSG's claim that this Court does not have jurisdiction to review the federal qualified immunity claim. It asserts only an appeal from the denial of immunity under R.C. Chapter 2744 is a final, appealable order.

**{¶42}** But the Ohio Supreme Court has addressed this issue and has concluded that an order denying a political subdivision employee federal qualified immunity from a 42 U.S.C. §1983 claim is a final, appealable order:

Pursuant to R.C. 2744.02(C), an order that denies an employee of a political subdivision immunity from liability under any provision of law is a final order. Although this section conflicts with R.C. 2744.09(E), R.C. 2744.02(C) prevails as the more recent and specific statute. Accordingly, *an order denying a motion for summary judgment in which a political subdivision or its employee sought federal qualified immunity from claims brought under Section 1983 is a final, appealable* order pursuant to R.C. 2744.02(C).

(Emphasis added); *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 41.

**{¶43}** Thus, we have jurisdiction to consider the denial of summary judgment to the City employees on their claim for federal qualified immunity from CSG's §1983 claim.

**{¶44}** Here, the City Appellants assert the trial court erred in denying federal qualified immunity to the City employees. They argue the court did not evaluate their possible immunity in any meaningful way or hold CSG to its burden to demonstrate that they violated CSG's established due process rights. The City Appellants note that CSG's

complaint only referred to due process rights generally and did not make a specific reference as to how the City employees impacted its constitutional rights.

**{¶45}** The City Appellants go on argue that CSG received notice and an opportunity to be heard regarding vacating the leased premises during the forcible entry and detainer hearing and at numerous times during those proceedings. The City Appellants claim they did not resort to self-help until after the forcible entry and detainer action had concluded. They assert that the issue here is not whether they violated the Lease but instead whether CSG demonstrated that each of the individual City employees violated the due process clause of the United States Constitution. Nothing in the record, they argue, demonstrates that the individual City employees "beyond debate" violated clearly established constitutional law.

**{¶46}** CSG argues the City Appellants denied its due process rights to present its arguments at a hearing before they resorted to self-help to reclaim the leased premises by destroying CSG's property.

**{¶47}** CSG also makes several arguments regarding the City and why the City is not entitled to federal qualified immunity. But the City Appellants have only argued federal qualified immunity as it may apply to the City employees. Thus, the following analysis applies only to the individual City employees and not to the City itself.

**{¶48}** The First District set out the burden for qualified immunity in *Summerville v. Forest Park*, 2011-Ohio-3457, ¶ 17-18 (1st Dist.):

> Qualified immunity shields a government official from civil liability unless (1) the official violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the challenged conduct. . .
>
> The plaintiff bears the burden of showing that government officials are not entitled to qualified immunity. If the plaintiff fails to demonstrate that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden.

*See also Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004) ("The plaintiff, thus, bears the ultimate burden of proof to show that the defendant is not entitled to qualified immunity.").

Case No. 25 MA 0071

**{¶49}** The trial court did not undertake an analysis of the qualified immunity claim as to the City employees. It found that Shasho made the decision to cut CSG's fiber optic lines, cut electricity to the leased premises, and remove CSG's equipment, all with Mayor Brown's consent, and Murray communicated these directives to the subcontractors. On these facts, the court found there were genuine issues of material fact to prevent summary judgment to the City employees on their claim of qualified immunity.

**{¶50}** "'Property is an individual entitlement grounded in state law * * *.' *Asher Investments, Inc. v. Cincinnati* (1997), 122 Ohio App.3d 126, 136, 701 N.E.2d 400. Consequently, property rights are generally only protected by 'procedural due process.'" *Foster v. Wickliffe*, 2007-Ohio-7132, ¶ 86 (11th Dist.). "To succeed on a procedural-due-process claim, a plaintiff must establish a constitutionally protected property or liberty interest and show that such an interest was deprived without appropriate process." *Jones v. Norwood*, 2013-Ohio-350, ¶ 57 (1st Dist.), citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-570, (1972); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir.1995).

**{¶51}** The First District explained what is required by procedural due process:

> At the core of procedural due process is the grant of notice and a hearing— at a meaningful time and in a meaningful manner. *Armstrong v. Manzo* (1965), 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62. Due process ordinarily requires some type of hearing prior to the deprivation of a significant property interest. *Memphis Light, Gas & Water Div. v. Craft* (1978), 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30; *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556.

*Asher*, 122 Ohio App.3d at 136 (1st Dist. 1997).

**{¶52}** Pursuant to Ohio law, a tenant holding a leasehold estate has a recognized property interest. *Jones*, 2013-Ohio-350, at ¶ 58 (1st Dist.), citing R.C. 5321.01 and R.C. 5321.04; *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 191 (1965). Thus, if CSG still held a leasehold estate, it had a recognized property interest for Fourteenth Amendment purposes. But we need not reach this determination.

**{¶53}** In its §1983 claim, CSG asserted that instead of attempting to properly terminate CSG's leasehold interest in the property, "*the City* embarked on a purposeful,

intentional, and malicious plan to cause the removal of CSG from the Premises by all of the following actions[.]" (Emphasis added; Defendant's Amended Counterclaims and Third-Party Complaint, ¶ 53). The complaint then lists eight actions that it claimed "the City" took as part of this plan to remove CSG. Included in this list is that "the City" "intentionally and purposely failed to provide CSG adequate due process rights to challenge their claim for restitution of the premises[.]" (Defendant's Amended Counterclaims and Third-Party Complaint, ¶ 53(g)).

**{¶54}** CSG further asserted the actions of the City and the City employees are "part of a pattern of practice of *the City's* specifically, and purposely violating the due process rights of property owners within the City as can be seen by *the conduct of the City* resulting in lawsuits filed in both Federal and State Courts." (Emphasis added; Defendant's Amended Counterclaims and Third-Party Complaint, ¶ 55). It goes on to say that the City employees' conduct "was taken outside the scope of any possible authority or job duties regarding their employment with the City rendering them personally liable for the damages caused to CSG." (Defendant's Amended Counterclaims and Third-Party Complaint, ¶ 56). CSG does not allege that the City employees deprived it of procedural due process. CSG's claim for failing to provide it with due process is raised against the City alone, not its employees.

**{¶55}** CSG does not allege, let alone satisfy its burden to show, that the City employees violated a clearly established constitutional right at the time of the challenged conduct.

**{¶56}** CSG relies on this Court's recent decision in *Nicholson v. Youngstown*, 2025-Ohio-1915, ¶ 2 (7th Dist.). In that case, Nicholson sued the City of Youngstown, the mayor, the Department of Public Works, and the Department of Property Code Enforcement and Demolition for illegally demolishing a house he owned. He raised numerous claims including the denial of due process and a taking of his property. The trial court granted summary judgment in favor of the defendants. In part, the trial court found that Nicholson did not plead any constitutional claims. On appeal, Nicholson contended that the unlawful demolition of a house implicates constitutional provisions of unlawful taking, a violation of due process, and that R.C. 2744.09(E) provides an

exception to governmental immunity for these claims. Federal qualified immunity was not discussed.

**{¶57}** This Court noted that state and federal courts have disallowed Ohio's sovereign immunity defense in wrongful demolition cases where federal constitutional claims are made, particularly under 42 U.S.C. §1983. *Id*. at ¶ 17. And we found that Nicholson's complaint did adequately assert constitutional claim of a violation of due process. *Id*. at ¶ 30. However, we never actually addressed the question at issue in this case – that being whether any of the defendants were entitled to qualified immunity. Thus, *Nicholson* is not of assistance in this case.

**{¶58}** In sum, because CSG did not meet its burden to show that the City employees violated its due process rights, the trial court erred in failing to grant qualified immunity to the City employees.

**{¶59}** Accordingly, the City Appellants' second assignment of error has merit and is sustained.

**{¶60}** For the reasons stated above, the trial court's judgment denying political subdivision immunity to the City is hereby affirmed. The trial court's judgment denying federal qualified immunity to the City employees is hereby reversed. Summary judgment is granted in favor of the City employees. The matter is remanded for further proceedings pursuant to law and consistent with this opinion.

Waite, P.J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the first assignment of error is overruled.  The second assignment of error is sustained.  It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed as to the denial of political subdivision immunity to the City.  It is reversed as to the denial of federal qualified immunity to the City employees.  Summary judgment is granted in favor of the City employees.  The matter is remanded for further proceedings pursuant to law and consistent with this opinion.  Costs to be taxed against the Appellee.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**